UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TIFFANY DEMMING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:14 C 01897 |
| v. | ) | Judge Marvin E. Aspen |
| | ) | |
| STAR TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Tiffany Demming filed this lawsuit against her employer, Star Transportation, Inc., alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA"). Demming contends that Defendant terminated her employment because of her disability and failed to provide her a reasonable accommodation. (Compl. ¶¶ 34–36.) Presently before us is Defendant's motion for summary judgment, which we grant for the reasons discussed below.

**FACTUAL BACKGROUND**[1]

Defendant hired Demming in 2010 as a truck driver. (Def.'s SOF ¶ a.) On December 20, 2012, Demming informed Defendant that she had injured her shoulder on the job. (*Id.* ¶ b.) Demming was unable to perform all of the duties of her truck driver position because

---

[1] Unless otherwise noted, the facts described herein are undisputed and culled from the parties' briefs and exhibits. Demming did not respond to Defendant's statements in the manner required by Local Rule 56.01(c). As a result, Defendant's nine facts are deemed admitted. M.D. Tenn. L.R. 56.01(g). The parties offered additional facts in their briefs, although not formatted as dictated by Local Rule 56.01(c). We will consider any material facts included in the briefs where supported by record citations. We cannot consider, however, Demming's references in her brief to excerpts of her deposition testimony that are not in the record. (*See* Resp. at 1–2 (citing to deposition pages that are not included in Dkt. No. 29-1 as she asserts).)

of her injury. (*Id.* ¶ c.) Initially, Defendant's third-party administrator ("Administrator") provided workers' compensation benefits to Demming. (*Id.*)

In addition, Defendant assigned Demming to light-duty (or "transitional") work at the local terminal on a temporary basis. (*Id.* ¶ d.) Pursuant to its policy, Defendant offers transitional work for employees who have suffered a work-related injury or illness. (*Id.*; Aff. of William Harris ¶ 6 (Def.'s Ex. 2, Dkt. No. 29-2); *see also* Driver Manual, Transitional Duty Policy (Def.'s Ex. 2D, Dkt. No. 29-2 at 11).) Transitional work may include clerical work. (Def.'s SOF ¶ d.) Demming performed transitional work (i.e., shredding and filing) consistent with her doctor's restrictions for roughly eleven weeks. (*Id.* ¶¶ d–e; Harris Aff. ¶¶ 7–8; *see also* 1/9/13 Ltr. to Demming (assigning light duty) (Def.'s Ex. 2E, Dkt. No. 29-2 at 12); Demming Dep. at 44–47, 57 (Def.'s Ex. 1).)

On March 27, 2013, however, the Administrator notified both Demming and Defendant that it had determined that Demming's shoulder injury was not work-related.[2] (Def.'s SOF ¶ e; Harris Aff. ¶ 8; *see also* 3/28/13 Notice of Denial of Claim for Compensation (Def.'s Ex. 2F, Dkt. No. 29-2 at 13); Demming Dep. at 60.) The Administrator therefore denied Demming's request for benefits. (Def.'s SOF ¶ e.) Consistent with its policy, Defendant also advised Demming that she was no longer eligible for transitional duty. (*Id.*; Harris Aff. ¶ 9.) William Harris, Defendant's Vice President of Risk Management, told Demming "that she would be placed on a leave of absence until she was released by her doctor to return to her DOT truck driver position." (Harris Aff. ¶ 9; *see also* Demming Dep. at 69, 71; Harris Dep. at 31–33 (Pl.'s Ex. 1 (Dkt. No. 34-1).)

---

[2] The record does not indicate what lead the Administrator to reach this conclusion. Demming vehemently contested the Administrator's conclusion, and separate litigation has since resolved that workers' compensation dispute. (*See, e.g.*, 12/23/14 Order Approving Final Settlement (Def.'s Ex. 2O, Dkt. No. 29-2 at 27–32).)

The following day, Demming went to Harris' office, accompanied by a friend, Angela Lyles. The parties dispute the specifics of the exchange that took place between Harris, Demming, and Lyles. We need not recount all of the details, and we draw all reasonable inferences in Demming's favor at this juncture.[3] Suffice it to say that, upon their arrival, Lyles (who did most of the talking) and Demming requested to see Demming's personnel and medical files. (Lyles Dep. at 15–20 (Pl.'s Ex. 2, Dkt. No. 34-3); *see* Harris Dep. at 34–36.) Harris testified that he believed that Lyles was Demming's legal representative and that the women should have made an appointment to meet about the files. (Harris Dep. at 33–36.) He refused their request for the files and ordered them to leave the building. (*Id.* at 35–38; Lyles Dep. at 15–22.) According to Lyles and Demming, Lyles indicated that she would leave but asked Harris if Demming could stay because she was an employee. (Lyles Dep. at 16–18, 22–23, 38–40; *see also* Demming Dep. at 89.) Demming testified that, at that point, Harris told her that she was "relieved of her duties." (Demming Dep. at 89.) Demming asked him if she "was fired," and he reiterated the she must leave the premises immediately. (*Id.*; Lyles Dep. at 16–17, 21–24.) Harris called the police, and Lyles and Demming left the building. (Harris Dep. at 39–40; Lyles Dep. at 16 (testifying that Harris informed police that "two black women . . . [were] being irate, out of control, and [he] want[ed] them out of this building immediately"); *see also* Lyles Dep. at 22–24, 38–40.)

By letter to Demming dated March 29, 2013, Harris restated the Administrator's decision and the consequences thereof. He also wrote that her conduct on March 28, 2013 was "very disruptive" to the work environment, constituted "blatant insubordination," and violated "an array of company work rules and policies." (3/29/13 Ltr. to Demming (Def.'s Ex. 2G,

---

[3] In addition, only a jury may assess witness credibility and weigh conflicting evidence. *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011); *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010).

Dkt. No. 29-2 at 14).) While Harris offered to meet with Demming to review her personnel file or to facilitate reconsideration of the Administrator's decision, he also instructed her not to "return to the facility until further notice." (*Id.*) Harris wrote Demming two additional letters in May 2013, addressing health insurance premium payments and informing Demming that she could apply for leave under the Family and Medical Leave Act ("FMLA"). (5/8/13 Ltr. to Demming (instructing Demming how to apply for leave) (Def.'s Ex. 2I, Dkt. No. 29-2 at 16) & 5/16/13 Ltr. to Demming (stating that Demming's health insurance will lapse if she does not pay her premiums by a certain date) (Def.'s Ex. 2J, Dkt. No. 29-2 at 17).) Harris testified that she did not respond to his letters. (Harris Dep. at 43, 48.) He also stated that he did not notify Demming that she could return to the facility. (*Id.* at 46.)

Demming testified that she believes she was fired on March 28, 2013. (Demming Dep. at 45.) To date, Defendant has not formally terminated Demming's employment. (Harris Aff. ¶ 10; Harris Dep. at 49–50.) According to Defendant, Demming remains on indefinite leave. (Harris Dep. at 54–55.) Demming concedes that she is no longer capable of performing the functions of the truck driver position she previously held. (Def.'s SOF ¶ I; *see also* Resp. at 7 ("Demming's shoulder condition prevents her from performing the essential functions of the truck driver position . . .").)

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *see also DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (describing the issue

as "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that on party must prevail as a matter of law") (internal quotation omitted). This standard places the initial burden on the moving party to identify those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "must go beyond the pleadings" and identify portions of the record demonstrating that a material fact is genuinely disputed. *Id.*; Fed. R. Civ. P. 56(c). The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Amini v. Oberlin Coll.*, 440 F.3d 350, 357 (6th Cir. 2006) (internal quotation omitted). In deciding whether summary judgment is appropriate, however, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513; *see Clayton v. Meijer, Inc.*, 281 F.3d 605, 609 (6th Cir. 2010).

## ANALYSIS

The ADA "is intended to ensure that individuals living with disabilities are treated fairly and afforded equal opportunity, including within the workplace." *Evola v. City of Franklin, Tenn.*, 18 F. Supp. 3d 935, 944 (M.D. Tenn. 2014); *Coffman v. Robert J. Young Co., Inc.*, 871 F. Supp. 2d 703, 713 (M.D. Tenn. 2013); *see also* 42 U.S.C. § 12101 (presenting findings of fact and setting forth the ADA's purposes). The ADA therefore prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Here, Demming asserts two discrimination claims under the ADA: unlawful termination and failure to provide a reasonable

5

accommodation. These two claims largely overlap, as they are based on the alleged failure to accommodate, but we begin by assessing Demming's termination claim.

## A. Discriminatory Termination

To make out a prima facie claim based on a discriminatory discharge, Demming must show that she: (1) is disabled, within the meaning of the ADA; (2) "is otherwise qualified to perform the essential functions of a position, with or without accommodation;" and (3) "suffered an adverse employment action because of [her] disability." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014); *Blazek v. City of Lakewood, Ohio*, 576 F. App'x 512, 516 (6th Cir. 2014); *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008); *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 810–11 (M.D. Tenn. 2011). If these elements are established, discrimination is inferred and the burden of production shifts to the defendant to raise a legitimate, nondiscriminatory reason for the adverse action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S. Ct. 1089, 1093 (1981); *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973); *Blazek*, 576 F. App'x at 516; *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007). Once a legitimate reason is offered, the inference of discrimination disappears, and the plaintiff must establish that the offered reason is a pretext for unlawful discrimination. *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093; *Blazek*, 576 F. App'x at 516; *Tuttle*, 474 F.3d at 317; *Burress*, 809 F. Supp. 2d at 810–11.

For purposes of the motion, Defendant concedes that Demming is disabled as defined by the ADA. (Mem. at 5 n.5.) The first element is thus satisfied. We skip over the second element for now, as it will be addressed in more detail below. We turn then to the third element, which requires Demming to prove that she suffered an adverse action because of her disability.

Throughout the litigation, Demming has alleged that she was terminated. (Compl. ¶¶ 32–35.) Indeed, she testified that she believes Harris fired her on March 28, 2013, when he relieved her of her duties and ordered her out of the building. (Demming Dep. at 45, 89.) The record also demonstrates that Harris instructed Demming not to return to the facility until further notice and yet never notified her that she could return.

Nonetheless, it is undisputed that Defendant has not formally terminated Demming's employment. (Harris Aff. ¶ 10; Harris Dep. at 49–50, 54–55.) Harris wrote Demming several letters, after March 28, 2013, addressing personnel issues that would not be relevant if she was no longer an employee. For example, although the tone of Harris' March 29, 2013 letter is not friendly, (Def.'s Ex. 2G), Harris offered to help Demming if she requested that the Administrator reconsider its denial of benefits.[4] Moreover, by letter dated May 8, 2013, Harris instructed her how to apply for FMLA leave. (Def.'s Ex. 2I.) On May 16, 2013, Harris wrote to Demming again, with concerns about her health insurance premiums and continued coverage. (Def.'s Ex. 2J.) Consistent with these letters, Harris' uncontroverted testimony establishes that Defendant considers Demming to be on indefinite leave.[5] (Harris Dep. at 49–55.) Based on the record before us, no reasonable jury could conclude that Defendant fired Demming on March 28, 2013— regardless of her subjective impressions and despite the obvious fact that the encounter between Harris, Lyles, and Demming went badly.

In opposition to the pending motion, Demming alternatively argues that she was constructively discharged by Defendant. Constructive discharge constitutes an adverse action and arises when an employee has experienced "working conditions . . . so difficult or unpleasant

---

[4] Harris sent Demming a second letter, also dated March 29, 2013, advising Demming to send copies of any evidence related to her injury claim to Defendant's counsel for their consideration. (3/29/13 Ltr. to Demming (Def.'s Ex. 2H, Dkt. No. 29-2 at 15).)

[5] That being said, Harris would not commit to welcoming Demming back to work as a driver if she attempted to return with a medical release. (Harris Dep. at 53–55.)

that a reasonable person in the employee's shoes would have felt compelled to resign." *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 555 (6th Cir. 2008); *Smith v. Henderson*, 376 F.3d 529, 533–34 (6th Cir. 2004); *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 462–63 (6th Cir. 2002); *see Hurtt v. Int'l Servs., Inc.*, 14 C 1824, 2015 WL 5332531, at *5 (6th Cir. Sept. 14, 2015). To establish a constructive discharge, a plaintiff must show that: "(1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; (2) the employer did so with the intention of forcing the employee to quit; and (3) the employee actually quit." *Savage v. Gee*, 665 F.3d 732, 739–40 (6th Cir. 2012) (internal quotations omitted); *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481–82 (6th Cir. 2012); *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080–81 (6th Cir. 1999); *DeSoto v. Bd. of Parks & Recreation*, 64 F. Supp. 3d 1070, 1083 (M.D. Tenn. 2014); *see Hurtt*, 2015 WL 5332531, at *5.

With these principles in mind, the problem with Demming's constructive discharge is readily apparent: she did not resign her position. Because Demming did not "actually quit" her job with Defendant, she cannot prevail on a constructive discharge theory. *Savage*, 665 F.3d at 739; *Regan*, 679 F.3d at 481; *DeSoto*, 64 F. Supp. 3d at 1083 (explaining that this doctrine was inapplicable where the plaintiff did "not allege that she quit"); *see Brooks v. Henderson*, 70 F. App'x 262, 266 n.2 (6th Cir. 2003) ("Broska cannot show constructive discharge, however, because he still works for the Post Office."); *Daniel v. Rutherford Cty.*, 08 C 678, 2010 WL 56082, at *12 (M.D. Tenn. June 5, 2010) (granting summary judgment because plaintiff "is still employed").

We acknowledge that the facts of this case are unusual. The record before us does not explain (and we will not speculate) why Defendant declined to terminate Demming's

8

employment over the nearly three years since her removal from light duty and the incident with Harris. Nor does the record explain why Demming took no action, either to attempt to return or to otherwise clarify her status.[6] In any event, the law requires sufficient proof of an adverse action for Demming to make out a prima facie case for discriminatory discharge, and that proof is lacking here.[7]

### B. Failure to Provide a Reasonable Accommodation

The ADA defines discrimination to include "not making reasonable accommodations" for disabled employees. 42 U.S.C. § 12112(a), (b)(5)(A); *see Steward v. New Chrysler*, 415 F. App'x 632, 641 (6th Cir. 2011); *Kleiber v. Honda of Am. Mfg, Inc.*, 485 F.3d 862, 868 (6th Cir. 2007); *Williams v. Prospect, Inc.*, 13 C 829, 2015 WL 1543500, at *3 (M.D. Tenn. Apr. 7, 2015). To succeed on such a claim, a plaintiff must show that she is disabled and that "she is otherwise qualified for the position despite . . . her disability," either (a) without accommodation; "(b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation." *Kleiber*, 485 F.3d at 869 (internal quotation omitted); *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 526–27 (6th Cir. 2015); *Rorrer v. City of Stow*, 743 F.3d 1025, 1038–39 (6th Cir. 2014); *Lovell v. Champion Car Wash, LLC*, 969 F. Supp. 2d 945, 950–51 (M.D. Tenn. 2013).[8]

---

[6] On the whole, it seems that the parties considered Demming's situation in terms of workers' compensation or perhaps FMLA benefits but may not have contemplated the ADA implications.
[7] Even if we are mistaken—i.e., if a jury could reasonably conclude on this record that Demming resigned or was fired—her discharge claim cannot survive summary judgment. As Demming has framed it, the discharge claim hinges on the reasonable accommodation claim, and vice versa. (Resp. at 6–7 (arguing that she satisfies the second element of the discharge claim, that she is "otherwise qualified," because she could have performed other non-driver jobs if offered as a reasonable accommodation).) But, as discussed herein, the reasonable accommodation claim fails for separate reasons.
[8] In the next step of this framework, the employer bears the burden of demonstrating "that a challenged job criterion is essential, and therefore a business necessity, or that a proposed

9

Here, Demming argues that she "could have continued working for Defendant in other positions that she held before that did not have the physical requirements of the driving position." (Resp. at 6.) She contends that she could have held office jobs, as she had in the past, and that other such "continuing work" was available. (*Id.* at 7.) In support of her position, Demming points to a form, the Request for Separation Information, completed by Defendant and submitted to the Tennessee employment security department. (*Id.* at 7; *see also* Request for Separation Information ¶ 3 (Def.'s Ex. 2K, Dkt. No. 29-2 at 18).) In the form, Defendant checked a box to report that "continuing work [was] available" at the time Demming stopped working.[9] (Request for Separation Information ¶ 3.) According to Demming, unspecified "continuing work" therefore should have been offered to her as an accommodation for her inability to work as a driver. (Resp. at 7.)

Although employers are obligated to consider reassignment as an accommodation for an employee's disability, that obligation is not triggered unless the employee requests "a transfer to a new position for which [she] was otherwise qualified." *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 258 (6th Cir. 2000); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004); *Thompson v. E.I. DuPont deNemours & Co.*, 70 F. App'x 332, 335–36 (6th Cir. 2003); *see also Carver v. Nashville Wire Prods.*, 13 C 1380, 2015 WL 419880, at *3 (M.D. Tenn. Jan. 30, 2015). Pursuant to these authorities, there are two fatal flaws in Demming's argument.

---

accommodation will impose an undue hardship upon the employer." *Kleiber*, 485 F.3d at 869; *Rorrer*, 743 F.3d at 1039; *Lovell*, 969 F. Supp. 2d at 951. We do not reach those questions here.
[9] The form implies that Demming sought unemployment benefits and, in doing so, informed the state that she quit due to illness or injury and that her last day of work was March 26, 2013. (*See* Request for Separation Information.) The record before us does not confirm this implication or indicate the outcome of any unemployment benefits claim. In the form, Defendant reported that it had "not been told she quit." (*Id.* ¶¶ 2, 4.)

10

First, Demming has neither shown, nor raised a question of fact, that she asked Defendant for a transfer as an accommodation. The Sixth Circuit has repeatedly stated that "the plaintiff bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Steward*, 415 F. App'x at 642 (internal quotation and emphasis omitted); *Turner v. City of Paris, Ky.*, 534 F. App'x 299, 302 (6th Cir. 2013); *Thompson*, 70 F. App'x at 336; *Coulson v. Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 857 (6th Cir. 2002); *Burns*, 222 F.3d at 258 ("Burns must show that he requested, and was denied, reassignment to a position for which he was otherwise qualified."); *see Vaughan v. United Parcel Serv.*, 06 C 626, 2007 WL 2908841, at *7 (M.D. Tenn. Oct. 4, 2007). Yet there is no evidence before us that Demming ever requested any accommodation of any kind.[10] Accordingly, her claim cannot stand. *Burns*, 222 F.3d at 258 ("Burns's failure to request a transfer . . . precludes him from recovering for discrimination under the ADA."); *see Steward*, 415 F. App'x at 642–43 (rejecting plaintiff's argument seeking an accommodation that she had not previously requested); *Brown v. Chase Brass & Copper Co.*, 14 F. App'x 482, 487 (6th Cir. 2001) (affirming dismissal of ADA claim where plaintiff had "failed to propose an accommodation of his disability").

Second, even if she had pursued a transfer generally, Demming has not shown that she sought a specific, vacant position, for which she was qualified. Where a plaintiff requests a transfer to another job as an accommodation under the ADA, she must show that a particular position was open and that she was qualified to fill it. *Kleiber*, 485 F.3d at 869–70; *Thompson*, 70 F. App'x at 336; *Coulson*, 31 F. App'x at 857; *Burns*, 222 F.3d at 257–58. Here, Demming

---

[10] Demming has not argued, alternatively, that Defendant failed to assist her in identifying other positions for which she might be qualified. *See, e.g.*, *Burns*, 222 F.3d at 258 ("Alternatively, Burns could show, which he did not, that he requested and was denied some specific assistance identifying jobs for which he could qualify."); *Vaughan*, 2007 WL 2908841, at *8.

11

has failed on both points. The only evidence offered by Demming to show that a vacancy existed at the pertinent time is the Request for Separation Information. That form, as completed by Defendant, indicates that "continuing work" was available, but it does not explain whether the continuing work was Demming's driver position, or otherwise. Even if we infer that "continuing work" referred to a non-driver position, the form does not show what particular position was vacant.[11] There are simply no details provided about the continuing work. *See, e.g.*, *Steward*, 415 F. App'x at 643 n.9 (finding that a vague email from the employer about potential but unspecified job openings did not create a question of fact as to a particular vacancy).

Moreover, even if Demming had identified a specific, vacant position, she has not demonstrated that she was qualified for it. She claims that she had held non-driver positions for Defendant in the past. (Resp. at 6–7.) But she has not provided any information about these prior positions, including, most importantly, whether they were vacant in March 2013 and whether she continued to be qualified to perform them.

In short, Demming has not established that she requested "a transfer to a new position for which [she] was otherwise qualified." *Burns*, 222 F.3d at 258; *Hedrick*, 355 F.3d at 457. As such, she has not raised a triable fact issue concerning whether she was "otherwise qualified" for continued employment with Defendant, as necessary to prevail on either of her ADA claims. Because no reasonable jury could return a verdict in Demming's favor, Defendant is entitled to summary judgment.

---

[11] Importantly, an employer must consider a transfer to a vacant position to accommodate an employee, but it "need not displace another employee, waive essential job requirements, or create a new position to make room for a disabled worker." *Turner*, 534 F. App'x at 302; *Steward*, 415 F. App'x at 642; *Hedrick*, 355 F.3d at 457; *Burns*, 222 F.3d at 257.

**CONCLUSION**

For the reasons set forth above, Defendant's motion is granted, and this case is terminated. All pending deadlines and further proceedings are stricken. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: February 16, 2016
       Chicago, Illinois